the motion for new trial charging misconduct of the jury filed subsequent to the adjournment of the term at which accused was tried cannot be considered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2847.]

Appeal from District Court, Jim Wells County; V. W. Taylor, Judge.

Manuel Garcia was convicted of theft, and he appeals. Affirmed.

E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. Under an indictment for theft, appellant's conviction condemned him to two years' confinement in the state penitentiary.

[1] The record is without a statement of facts. The indictment is regular. There are some exceptions to the court's charge which, in the absence of a statement of facts, we must assume were not well taken. Vernon's C. C. P. art. 743, p. 521, § 56; Ruiz v. State, 48 Tex. Cr. R. 470, 88 S. W. 808; and other cases listed in the note mentioned.

[2] A bill of exceptions purporting to preserve evidence on an assignment in the motion for new trial charging misconduct of the jury is in the record. It seems to have been filed subsequent to the adjournment of the term of court at which appellant was tried, and for that reason, under the ruling in Black v. State, 41 Tex. Cr. R. 185, 53 S. W. 116, cannot be considered. For other cases to the same effect see Tarleton v. State, 62 S. W. 748; Reinhard v. State, 52 Tex. Cr. R. 59, 106 S. W. 128; Probest v. State, 60 Tex. Cr. R. 608, 133 S. W. 263; Williams v. State, 56 Tex. Cr. R. 225, 120 S. W. 421. We have read the bill, however, and if it was in condition authorizing its consideration we would not hold that the trial court erred in its ruling.

The judgment of the lower court is affirmed.

---

JANKS v. STATE. (No. 4454.)

(Court of Criminal Appeals of Texas. April 25, 1917. On Motion for Rehearing, June 13, 1917.)

1. INDICTMENT AND INFORMATION ⬤70—INFORMATION—SUFFICIENCY.

An information, alleging that the prosecuting witness stated accused threatened to take his life, etc., *held* insufficient because not positively alleging accused's commission of offense, but only that affiant charged him with it.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 192.]

On Motion for Rehearing.

2. HOMICIDE ⬤256 — THREATS TO KILL — SUFFICIENCY OF EVIDENCE.

Evidence that accused stated he would get his gun and kill an officer before allowing him to seize property under writ of sequestration, which was denied by defendant, *held* not to sustain a conviction for making threats to kill.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 542.]

Appeal from McLennan County Court; James P. Alexander, Judge.

L. Janks was convicted of making threats to kill, and appeals. Reversed and remanded.

John L. Poulter, of Ft. Worth, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. There are several questions suggested for revision, but under the view we take of the case but one is necessary to be considered as it disposes of this appeal as presented.

[1] The information reads as follows:

"Personally appeared before me the undersigned authority J. S. Dixon, who, after being duly sworn deposes and says that L. Janks in the county of McLennan and state of Texas, heretofore on or about the 8th day of November A. D. 1916, did then and there unlawfully and seriously threaten to take the life of a human being, to wit, J. S. Dixon, and did then and there unlawfully and seriously threaten to inflict serious bodily injury upon a human being, to wit, J. S. Dixon, against the peace and dignity of the state."

This information is not sufficient. The question having been passed upon several times, we deem it unnecessary to discuss it, but cite the authorities which are in point. Zinn v. State, 68 Tex. Cr. R. 149, 151 S. W. 825, and Compton v. State, 71 Tex. Cr. R. 7, 158 S. W. 515.

The information being insufficient, the judgment is reversed, and the cause remanded.

On Motion for Rehearing.

On the former day of the term the judgment herein was reversed and remanded. Since the rendition of that opinion the state has filed a motion for rehearing, supplying an information, which seems to be in accord with the law. The motion for rehearing is granted, and the record passed on as presented.

We think it ought to be stated that many of the records brought before this court recently have been sent up in a very negligent and careless manner. Papers have been transcribed wrongly, and some omitted. Defective records in all forms have been before this court recently, and it may be necessary, unless this matter be changed and the records attended to as they should be, and made up according to the rules, that this court may be called upon to administer some discipline. We call attention to this, and hope the clerks will not be negligent hereafter.

[2] This case is based upon the proposition that appellant made serious threats to kill John S. Dixon. The evidence shows that appellant, a boy about 19 years of age, had bought a buggy supposedly on the installment plan or on credit, and had not fully paid for it. The seller had instituted a sequestration case, and Dixon and another party went

out to levy the writ of sequestration and take the buggy. When they went to the residence of appellant's father to get the buggy appellant was down in the field at work. He saw them, and came to where they were. Upon being informed they intended to take the buggy, he told them they could not do so. This brought trouble between them, the state contending that he threatened to kill the officers, or words to that effect. Sharp words occurred, and Dixon informed him that he would take the buggy, and that if he, appellant, wanted to use his gun, he had better get it as he, Dixon, was armed. He says appellant went into the house. When he came back he had something in his pocket. He says whatever this was was not seen, but the theory of the state was that it was supposed to be a pistol. The state's theory was that during this discussion appellant made the threat that if Dixon undertook to carry the buggy away, he "would pump him full of lead." Appellant's theory is that he did not threaten to kill them on account of the buggy, but he protested against their taking the buggy under the circumstances, and this led to trouble, and Dixon hit him two or three times; that he then told him if he did not quit beating him he would pump him full of lead. Appellant was a country boy about 19 years of age, and had bought this buggy on a credit, but had not paid for it, and this sequestration suit was brought to take the buggy away from him and carry it to town. The sequestration writ was subsequently quashed and the buggy returned to the boy.

The court seemed to have tried this case largely upon the theory it was a resistance of appellant to the execution of the sequestration writ, and not threats to take life. Whatever threats may have been made, whether conditional or not, they grew out of the fact that the parties were undertaking to execute, or were executing, the sequestration writ and taking the buggy away, and attendant facts and circumstances. After a careful reading of the facts in the case we are of opinion that they are not sufficient to justify the verdict of the jury. The state relied upon this state of case as made by the witness Dixon: While he had the buggy or about the time he was taking it appellant came walking up and said:

" 'What are you going to do with my buggy?' and I told him I was going to take it to town. I showed him the writ and gave him a citation. He would not take the citation, and I stuck it under his suspenders. He says, 'You can't take that buggy off,' and I said, 'I certainly will;' that I had a writ for it and was going to take it. He said, 'I will go and get my gun and kill you before you shall take it.' I told him to go get his gun; that I already had mine. He was in his shirt sleeves, and he turned and went into the house, and in a few minutes he came out with his coat on, and with something sticking up in his hip pocket. He then said, 'You had just as well cut it loose; if you don't I will pump you full of lead.' I made a grab at him, and just struck the lapel of his coat with my fingers, and he run back into the yard. About that time I heard a woman scream, and they came running from everywhere. Some came out from the house and some from behind the house and some from the field; there must have been 12 or 15 people come running up around me."

This is a general statement, and as strong as the state put its case. This is the party whose life was threatened. This witness testified and the facts all show without contradiction that this was the state's case. The defendant denied these things, and said he was struck by Dixon and finally knocked down, and it was at that time he said he would pump him full of lead if he did not quit beating him; that he had no pistol, and that he did not get a pistol when he went in the house. This was but a conditional threat. It was not executed, nor sought to be executed. If the state is right, and he had the pistol, he could have done so. If he was right about it, he had no pistol, and could not do anything. It was not a future threat, but it was a threat now to be executed and at the time it was made. He did not execute it, or attempt to execute it, and the evidence, in the judgment of the writer, excludes the idea that it was seriously made to kill, and he is not willing under this record to permit this conviction to stand.

The state's motion for rehearing is granted, and the judgment now reversed and remanded on questions presented by appellant.