EX PARTE WERNER SCHMIDT.

No. 22447.  Delivered January 27, 1943.

The opinion states the case.

*Roscoe Runge,* of Mason, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Kurt Martin filed an affidavit before a justice of the peace in Mason County on September 26, 1942, alleging that Werner Schmidt did, on the 18th day of August, 1942, threaten to do bodily injury to Ed Kroerner and Seth Kothmann. It is further alleged that Schmidt seriously threatened to do bodily injury to the affiant on or about the 25th day of September, 1942.

Hearing was had on said application on the 2nd day of October, following, and the justice of the peace ordered Schmidt to give security in the sum of $1,000.00 conditioned that he would not commit the offenses he was alleged to have threatened to commit against the parties named. Appellant then applied to the judge of the Thirty-third Judicial District for a writ of habeas corpus, seeking release from the order of the justice of the peace. This was heard on the 13th day of October and the writ applied for was denied.

Judgment was entered ordering appellant to be held in the custody of the sheriff for a period of one year unless he filed bond in the sum of $1,000.00, conditioned that he keep the peace, etc.

Kurt Martin and appellant had long been residents of the same community and it will be presumed from the evidence that they had never been close friends and associates, yet the first outbreak of hostilities between them occurred on the 18th day of August, 1942, when appellant appeared at the Martin home considerably under the influence of liquor and engaged in a typical drunk fuss with Martin. The witness testified that "Werner Schmidt did threaten to do me bodily injury by his attitude. He doubled up his fist and said that he could lick me with one hand. * * * * * and doubled his chest out and came to me and took the attitude of somebody trying to raise a rukus, trying to start a fight." Some days later, the two engaged in a fight on the streets of the town of Mason. This seemed to have grown out of the fact that Martin had filed charges in the justice court against Schmidt for disturbing the peace. The other two parties were employees of Martin, working on his ranch which adjoined one operated by Schmidt, and it was testified that appellant threatened them, calling them obnoxious names on more than one occasion, principally in the office of Martin's lawyer.

On the day previous to the filing of the complaint in this proceeding, Schmidt approached Martin in a domino hall and

wanted him to dismiss charges pending against him in the justice court and recalled that he had gone to Martin's home and apologized to him and his wife. At the same time he told Martin that if he pressed the charges, they were both going to have to pay another fine for fighting. This occurred a month and seven days after the transaction in which it is alleged that appellant threatened Martin's two employees. Martin testified that these threats were seriously made, but the seriousness of a threat authorizing the placing of one under bond to secure his peace becomes a question of law, based on the facts and circumstances under which the supposed threats were made.

The evidence given by the witness Martin does not coincide with the allegations in the affidavit which forms the basis of this proceeding, for he says that these threats were made at his house, that the threats were seriously made against him and his property, and that "He put the threat into execution." There seems to have been no threat made against Martin on August 18th, the date alleged in the complaint.

As to the other parties, we fail to find anything in the evidence further than the abusive language of a drunk and the bragging about what he was able to do. The threats relating to the property were only to the effect that he would go to the premises of Martin and "trespass" all he wanted to—apparently he meant he was going fishing on such property.

This case was tried on the 13th day of October, lacking eight days of being two months from the time the threats were alleged to have been made against Kroener and Kothmann, yet there is no evidence that any effort was made to carry them into execution or to continue the threats. Appellant testified that he had made none and that he had no present desire and had never had any since the 18th day of August; that he had seen the men frequently since and had had no trouble with them; that he had never had any serious intention to cause them any trouble. On the 2nd day of October previous to the trial in this case, the matter had been gone over in court without any outbreak of hostilities. He also saw Martin frequently after the 26th of September and never attempted to injure him at any time. They would speak and pass on.

What actually occurred after the dates alleged in the complaint corroborate appellant's evidence as to his intentions,

for it will be conceded that he had ample opportunity to carry his threats into execution if they were seriously made—if he intended to do so and was able to accomplish such purpose. The evidence is wholly insufficient to authorize the order from which this appeal comes. Art. 1267, Vernon's Ann. P. C., Art. 75, Vernon's Ann. C. C. P. and authorities referred to. See also Brown v. State 154 S. W. (2d) 464.

The judgment of the trial court is reversed and respondent is directed to release the relator from custody.