HENRY BROWN V. THE STATE.

No. 21659.   Delivered June 18, 1941.
Rehearing Denied October 15, 1941.

The opinion states the case.

*Percy Woodard,* of Marshall, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted on a charge of threatening to take the life of Joe Will Westmoreland who was the superintendent of the farm on which appellant lived in Harrison County. His fine was assessed at $250.00 with six months in jail.

Before discussing the facts of the case which we believe pertinent, it may be said that we cannot agree with appellant

that the prosecuting witness was engaged in an unlawful undertaking as anticipated by the article of the statute invoked. The doctrine laid down in Lane v. State, 276 S. W. 712 does not, in our opinion, apply under the facts of this particular case. In that case Rose went onto the rented premises to construct terraces on land which Lane had prepared for planting. He was destroying the work Lane had done and in which he had a valuable property right. The prosecuting witness in this case certainly had a right to go onto the premises to check the landlord's part of the rents. In the absence of an agreement, expressed or implied, to the contrary, there could be no dispute about this. It was not unlawful for him to try to persuade appellant to show him the cotton, and to advise him that he would get an officer if appellant refused to do so. The reversal of the Lane case was based on the unlawful act of the prosecuting witness which brought it within the exception.

It appears from the evidence that appellant is a negro and, as a tenant on the farm of Frank Davis, he was engaged in gathering his crop of cotton. The prosecuting witness went to the field where he was working under the belief that appellant was hiding some of the cotton which he had picked. He asked about the prospects of one bale and appellant told him that he had some cotton out and would have the bale soon. This was in the forenoon. In the afternoon the witness went back and asked appellant to show him where the cotton was kept and the appellant told him that it was not on the place. He then accused appellant of having the cotton and told him that he had just as well to confess it to him as to the officers. When he did this the apellant "cut across the field" and got his boy and brought him back to the house where the witness said they had the cotton stored. It was here that it is alleged the threat was made, and we quote the language of the witness as follows:

"When I got to the house I said 'I've got you now, Henry.' He threw a shot gun on me, and started to shoot me.

"Q. What did he say? A. He said he was going to kill me. That's about the best I remember the words he said.

"Q. He pointed the gun at you? A. Yes.

"Q. Said he was going to kill you if you did or didn't do something? A. No, he just pointed the gun at me. I was at the edge of the porch, not two or three feet from him. He had the gun on me and I decided he was going to kill me. I just raised up, but he still had the gun on me. He finally just put

it on the floor, and I left when he had the gun in his hand. It was a 12 gauge single barrel shot gun.

"Q. Did he have it pointed at you? A. Yes.

"Q. Was he in such proximity to you that if he had fired the gun it would have killed you? A. Yes, it was."

The law is very definite and positive. The threat must be seriously made and not merely the outburst of one's temper in the heat of passion. It must be the expression of a conclusion deliberately made. It, therefore, becomes always in such cases pertinent to quote the exact facts as we have done above. The very language is necessary to a consideration of the case and the surrounding circumstances are also proper and essential to a correct conclusion in each individual case to which it is sought to apply the law. Necessarily, no two cases are alike. The facts will be considered as though they were undisputed. Whether or not they fulfill the requirement of the law fixing the penalty is a matter of law which this court must consider. We have read a great number of authorities on the subject and it is impossible for us to say that we do agree or that we disagree with many of these without examining the entire record as did the writer of each particular opinion. Some of the cases evidently do not fully state the facts which the judge had before him, but these principles must always be borne in mind. "A rash, inconsiderate threat will not suffice to support the imposition of a penalty upon a citizen." Strong v. State, 255 S. W. 432, Janks v. State, 196 S. W. 182. From the latter case we quote from Judge Davidson's reasoning as follows:

"This was but a conditional threat. It was not executed, nor sought to be executed. If the state is right, and he had the pistol, he could have done so. If he was right about it, he had no pistol, and could not do anything. It was not a future threat, but it was a threat now to be executed and at the time it was made. He did not execute it, or attempt to execute it, and the evidence, in the judgment of the writer, execludes the idea that it was seriously made to kill, and he is not willing under this record to permit this conviction to stand."

We are frank to admit that this opinion does not seem to be wholly in accord with Shelton v. State, 119 S. W. 862, which was also an opinion by Judge Davidson. We think it is sufficient to say in this case that the full record of each case is not before us and that it is not incumbent upon us to enter into a discus-

sion in an attempt to reconcile the authorities, nor do we believe that our conclusion will modify either of them.

We have before us the facts of this case and are unable, after a careful consideration, to conclude that the threat was seriously made as contemplated by the law. The threat in the quoted testimony is more to be implied than expressed. The witness says that he did not say in specific words that he was going to kill him. At least he could not quote the words if he did. "He just pointed the gun at me. I was at the edge of the porch, not two or three feet from him. He had the gun on me and I decided he was going to kill me." Most any of us would have implied the same thing at the particular instant, but his subsequent action proved the contrary. He was in position to carry his threat into execution if it were seriously made. The record does not reflect any intervening cause to prevent or even persuade him not to do so. Neither did time elapse to enable him to change his mind. If a serious threat, it was for immediate execution. His acts constitute the best interpreter of the seriousness of his intention and the conclusion must be different to that reached by the jury. So believing, it is our duty to reverse the case and remand it for a new trial.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

The district attorney of Harrison County files a motion for a rehearing suggesting that we were in error in our original opinion herein, and cites us to Art. 1266 of the Penal Code in which it is said:

"To constitute the offense it is necessary that the threat be seriously made, and it is for the jury to determine whether the threat, if made, was seriously made or was merely idle and with no intention of executing the same."

We do not think it is shown from the evidence that this man seriously intended to kill the complaining witness. Nothing was present keeping him from doing so, if he thus intended, and we do not think the jury was justified in its conclusion that he did so seriously intend to carry out his statement made at such time.

The presence of the complaining witness on property under rental contract to appellant might or might not have con-

stituted a trespass upon appellant's rights, depending upon their rental contract, but it does seem reasonably clear to our minds that the testimony shows that appellant claims he was merely attempting to protect himself and his property, and under Art. 1267, P. C., if he was merely trying to prevent the commission of some unlawful act by another; that is the taking of appellant to town against his consent, we think he would be entitled to have Art. 1267 P. C. given in charge to the jury in the event of a further trial herein.

The motion is overruled.