Anthony Paul GODSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 843–82.

Court of Criminal Appeals of Texas, En Banc.

Oct. 1, 1986.

David K. Chapman (court appointed), Fort Worth, for appellant.

Bill M. White, Former Dist. Atty., Sam D. Millsap, Jr., Dist. Atty., and Alan E. Battaglia and Julie B. Pollock, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of attempted capital murder. The court assessed punishment at confinement for ten years. The Fourth Court of Appeals in San Antonio reversed the conviction because of the failure of the trial court to charge on the lesser included offenses of aggravated assault and reckless conduct. *Godsey v. State*, 640 S.W.2d 336 (Tex.App.—San Antonio, 1982). The Court of Appeals also held that the facts and circumstances of the offense were sufficient to permit a rational trier of fact to find that appellant had specific intent to commit capital murder and that he engaged in actions that amounted to more than mere preparation for the offense. We granted the State's petition for discretionary review on the issue of whether the evidence showed that appellant was guilty only of a lesser included offense. Appellant's petition was granted to review the Court of Appeals' holding that the evidence was sufficient to support a conviction for attempted capital murder, that the charge should have instructed the jury on the lesser included offenses of aggravated assault and reckless conduct, and if, in the event reversal was required, the State could retry appellant on the lesser included offenses.

On May 12, 1979, in the early evening, several people witnessed appellant firing a gun into the air around the Nimitz Apartments in San Antonio. Police arrived at the Nimitz Apartments and were directed to apartment F-6, as the one into which appellant had gone. The apartment was on the second level of the building and officers positioned themselves both upstairs and downstairs around the apartment. Several officers yelled that they were police officers and for appellant to come out with his hands over his head. Twenty to thirty minutes later six people came out of the apartment, including appellant's mother and sisters. The police identified themselves and instructed the six to put their hands above their heads. Apparently, they were somewhat surprised to see the police. Several officers testified that some of these six people told them appellant and an infant were still inside and appellant was armed. They were taken to another part of the apartment complex. The door to the apartment was left wide open after the six people had come out.

Between twelve and twenty officers, most of them uniformed, were present at

the scene. Officers West and Renken, who were positioned on the second level balcony, about six or eight feet from the door, yelled for appellant to come out, that they were police. West and Renken were situated to the side of the door and could not see inside the apartment. Detective Gaston and Officer Teel were standing directly across from the open front door, about twelve to fifteen feet away on the second level. They could see into the apartment. Other officers were positioned along the stairs leading up to the second level, and on the ground level.

One or two minutes after the six had exited the apartment, appellant stepped outside of the front door onto the balcony. Appellant had his left hand on top of his head and his right hand at his side. A pistol was stuck in the waistband of his pants. Gaston, Renken and West yelled at appellant not to touch the gun and to put both hands on top of his head. Appellant looked at Gaston across from him, looked at West and Renken to his side, and looked at the officers on the ground. Then, with "a sort of half-smile on his face," he slowly and deliberately pulled the gun out of his waistband with his right hand. The police yelled at him to drop the gun. Appellant raised the gun up, moving it in an arc, and in the process of moving it pointed it first toward Renken, and, continuing to move his arm, pointed it toward the officers on the ground level, and finally brought it up and pointed it at Gaston and Teel, who were directly across from him. Appellant leveled the gun at Gaston and Teel. Three officers then fired at appellant, one shot hit him in the jaw and knocked him backwards into the hallway of the apartment. His gun slid across the floor a few feet from his head.

Appellant's mother, cousin, and sister testified that appellant had been talking about committing suicide that afternoon and evening. Right before the shooting, when his mother was leaving the apartment apparently to get something to eat, appellant told her that he was going to commit suicide that night. She asked him to give her his gun, but he refused.

Appellant testified that he had been released from the state hospital eight days prior to the day of the offense, after undergoing treatment for alcoholism. He said that on the day of the offense he was trying to get drunk enough to have the nerve to kill himself. Appellant testified that he told his mother he was tired of living and tired of his problems. She talked to him for a few minutes, then told him she was going to get some food and would be right back. Appellant said that after she had gone, he left the gun in the bedroom and walked into the hallway, intending to go into the kitchen to get another beer. He said he was then shot in the hallway. Appellant did not remember confronting the officers and could not explain why his gun was found a few feet from his head in the hallway.

Appellant contends that the evidence is insufficient to show that he had the specific intent to commit capital murder or that he engaged in an act amounting to more than mere preparation for the offense of capital murder. V.T.C.A.Penal Code, Sec. 15.01(a) defines criminal attempt:

A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

Appellant was charged with attempted capital murder under V.T.C.A.Penal Code, Sec. 19.03(a)(1), specifically, that he did "intentionally and knowingly attempt to cause the death of Garland Gaston, ... having at the time the specific intent to commit the offense of capital murder, and the said complainant was a peace officer acting in the lawful discharge of an official duty, and the said defendant knew the complainant was a peace officer." Appellant contends that the facts do not show that he had this specific intent to intentionally cause the death of Officer Gaston.

The specific intent to kill may be inferred from the use of a deadly weapon, *Flanagan v. State*, 675 S.W.2d 734 (Tex.Cr.

App.1984); *Bell v. State*, 501 S.W.2d 137 (Tex.Cr.App.1973), unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Flanagan*, supra; *Hatton v. State*, 31 Tex. Cr.R. 586, 21 S.W. 679 (1893). The court in *Hatton*, 21 S.W. at 679, stated what is still the law, namely: "If a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the evidence must be established by other facts." See also *Flanagan*, supra; *Hall v. State*, 418 S.W.2d 810 (Tex.Cr. App.1967); *Kincaid v. State*, 150 Tex.Cr.R. 45, 198 S.W.2d 899 (1947). The facts of the instant case show exhibition rather than use of a deadly weapon by appellant. Therefore, we cannot use the permissible inference supplied by use of a deadly weapon in a deadly manner. We must look to the facts and circumstances to establish specific intent to kill. The exhibition of a deadly weapon and the manner of its exhibition is a circumstance to be considered.

The old offense of assault with intent to murder is the predecessor to attempted murder. See V.T.C.A.Penal Code, Tables, and *Flanagan v. State*, 675 S.W.2d 734 (Tex.Cr.App.1984). Both offenses require(d) specific intent to kill. *Flanagan*, supra. Naturally, the most obvious cases and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person. See *Wallace v. State*, 679 S.W.2d 1 (Tex.Cr. App.1983); *Flanagan*, supra; *Williams v. State*, 567 S.W.2d 507 (Tex.Cr.App.1978); *Colman v. State*, 542 S.W.2d 144 (Tex.Cr. App.1976); *Hill v. State*, 456 S.W.2d 699 (Tex.Cr.App.1970); *Hall v. State*, 418 S.W.2d 810 (Tex.Cr.App.1967); *Yanez v. State*, 403 S.W.2d 412 (Tex.Cr.App.1966); *Muro v. State*, 387 S.W.2d 674 (Tex.Cr. App.1965); *Streets v. State*, 148 Tex.Cr.R. 517, 188 S.W.2d 582 (1945); *Honey v. State*, 132 Tex.Cr.R. 98, 102 S.W.2d 224 (1937); *Hatton*, supra. However, see also *Thompson v. State*, 37 Tex.Cr.R. 448, 36 S.W. 265 (1896) where the defendant "presented" a gun to the sheriff and forced the sheriff into a cell so that the defendants could escape. The defendant apparently made clear that he would kill the sheriff if the sheriff did not comply. The court found specific intent to kill simply by the circumstances surrounding the pointing of the gun. While very few cases can be found where pointing a loaded firearm has been involved, we emphasize that a finding of specific intent rests on the facts and circumstances of each individual case.

All cases in which a gun was fired or attempted to have been fired have not been upheld as sufficient to show specific intent. Appellant points to several cases in which a weapon was used and the facts were held insufficient to show specific intent to kill. He contends that if these cases are insufficient, the instant case is likewise insufficient.

In *King v. State*, 312 S.W.2d 677 (Tex.Cr. App.1958) a sheriff went to the defendant's house to talk to him. The defendant refused to talk with the sheriff and talked as if he " 'didn't have the right sense' " or was " 'cracking up.' " Three additional deputies arrived on the scene. The defendant came out of his house with a rifle and the deputies told him to drop the gun and talk with them. The defendant ran around his house and the deputies pursued him. As he ran, the defendant turned and shot his rifle. The deputies heard the bullet " 'whistle' " by them and appellant continued fleeing. He was then shot by the deputies.

The court held, without any discussion, that these facts were not sufficient to show that the defendant was guilty of the offense of assault with intent to murder with malice.

*King*, supra, is distinguishable from the instant case. It was a prosecution for assault with intent to murder with malice. While the opinion is not clear on what basis the evidence was insufficient, it seems evident that malice was not proved. Malice requires cool, deliberate action or premeditation. See *Parks v. State*, 131 Tex.Cr.R.

464, 99 S.W.2d 943 (1937). The sheriff stated that the defendant talked as if he were "cracking up." Thus, although not specifically stated, it appears that the evidence was insufficient to that extent. The court did not address or discuss specific intent to kill, which could be present despite the absence of malice. See *Parks*, supra. *King*, does not support appellant's contention that specific intent was found to be lacking in *King* and therefore, by comparison, is not shown by the facts of the instant case. Cf. *Parks*, supra, in which the defendant actually fired at and wounded the complainant and the court held the evidence insufficient to show malice but indicated that the defendant could be retried for murder without malice.

*Neal v. State*, 534 S.W.2d 675 (Tex.Cr. App.1975), also cited by appellant, is distinguishable on its facts. The defendant in *Neal* started to reach for his gun. The police officer then fired a single shot at the defendant, missing him. The defendant threw his gun onto the ground. The defendant never pointed the gun or drew it. The facts are not similar to the instant case.

Appellant also cites *Davis v. State*, 516 S.W.2d 157 (Tex.Cr.App.1974) which involved a conviction for assault with intent to murder. A police officer found a loaded gun on the ground under the car near the driver's door after stopping the defendant following a high speed chase. Four bullets in the gun had dents in them as if the gun had been fired. The officer testified that he had no reason to believe he had been shot at by the defendant. The evidence was found to be insufficient to show specific intent to kill. The facts in *Davis* do not even show that the defendant had a gun in his hand or that he had attempted to fire it at the officer. These facts are not similar to those in the instant case where testimony shows that appellant very deliberately pulled his gun and aimed it at the officers.

In *Sloan v. State*, 76 S.W. 922 (1903), in a prosecution for assault with intent to murder, the defendant "snapped" a shotgun at the complainant. In holding this insufficient to show intent to kill, the court stated that the barrel of the gun which the defendant attempted to discharge was incapable of being discharged, although the other barrel was loaded and could have been discharged. The court held the evidence insufficient to show intent to kill because the evidence showed that appellant could have easily killed the complainant at any time and he did not do so. The surrounding facts and circumstances, including use of a knife which the complainant easily took away from the defendant, did not demonstrate an intent to kill. There was no intervening cause which prevented the defendant from killing when he had the opportunity to do so and subsequent events to the "snapping" of the gun showed no intent. See *Brown v. State*, 142 Tex.Cr.R. 405, 154 S.W.2d 464 (1941).

*Ginn v. State*, 128 Tex.Cr.R. 109, 79 S.W.2d 327 (1935) is similar to *Sloan*, supra. In finding the evidence insufficient to show specific intent to kill, the court stated that the record reflected that the defendant's gun was ineffective beyond fifty yards and that the defendant fired into the ground when the complainant was two hundred yards away. In order to prove assault, the ability to commit a battery must be proved. The court noted that since appellant fired when the complainant was out of range, he had no ability to commit a battery. Further, the record showed that the defendant fired into the ground and not at the complainant. The facts and circumstances surrounding the use of the weapon thus showed no intent to kill. *Ginn* is distinguishable from the instant case.

In reviewing the sufficiency of the evidence to prove specific intent we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found proof of specific intent beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444 (opinion on rehearing) (Tex.Cr.App.1983); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 318–319, 99 S.Ct. at 2788–2789.

Appellant stood outside his door with a gun in his waistband. He saw the police, between twelve and twenty of them, most of them uniformed. They were pointing their guns at him and telling him to put his hands on top of his head. Appellant looked at them, ignored their order, and instead very slowly and deliberately pulled the loaded gun from his waistband. Then, again ignoring the instructions of the police to drop the gun, appellant exhibited it in a manner that indicated he intended to use it. He swung the gun in an arc until it was pointed directly at Gaston and Teel, who were twelve to fifteen feet directly across from appellant. He stopped the motion of his arm, as if he were aiming. At this point his actions were interrupted by shots from the police.

These actions are sufficient to show that appellant had the specific intent to kill. We are not holding that the pointing of the loaded gun, in and of itself, is sufficient. Rather, the context of the offense, the way in which the pointing came about—the facts and circumstances of the offense, prove the intent. Appellant was not merely waving the gun around. He deliberately pulled it out, after seeing the armed officers with their guns pointed at him. He ignored their orders not to draw the gun and then to drop the gun. And, finally, he pointed the gun in such a way that it was almost as if he were "drawing a bead" on Gaston and Teel. In addition, the jury heard the evidence about appellant's suicide wishes. The inference to be gotten from the evidence and one which supports an intent to kill, is that appellant could have decided to shoot the officers so that they would then shoot him. Viewing the evidence in a light most favorable to the verdict we hold that the facts and circumstances of the offense together with appellant's suicide wishes which support an intent to kill the officer, are sufficient to support the jury's finding of specific intent

to commit attempted capital murder. The ground of error is overruled.

Appellant contends that the act of pointing a gun is not an act that amounts to more than mere preparation for the offense of attempted murder. He contends that something more is necessary. We do not agree.

As the practice commentary to V.T.C.A.Penal Code, Sec. 15.01 notes, the purpose and usefulness of the attempt statute is that it "permit[s] law enforcement personnel to intervene and prevent the harm intended...." Attempt law allows intervention before the defendant has come dangerously close to committing the intended crime and allows the police " 'a reasonable margin of safety after the intent to commit the crime was sufficiently apparent to them.' " W. LaFave & A. Scott, Criminal Law, pp. 426–427 (1972). The only act that appellant did not do was pull the trigger, an act which could have accomplished the commission of murder. We do not believe that the intent of Sec. 15.01 was to draw a line at the " 'last proximate act.' " *McCravy v. State,* 642 S.W.2d 450, 460 (opinion on rehearing) (Tex.Cr.App.1982). To require some proof that a defendant attempted to fire and the gun misfired or the shot missed its target undermines the notion of attempt offenses in which the act is more than mere preparation that "tends but fails to effect the commission of the offense intended." The precise intent of Sec. 15.01 is to punish action for the intended offense while allowing intervention before an act which could constitute the offense itself occurs. Appellant very slowly and deliberately pulled a loaded revolver in direct violation of police instructions and moved it in such a way as to aim at two officers. The only remaining act for the commission of capital murder was for appellant to pull the trigger and hit his target. His actions constituted more than mere preparation. The ground of error is overruled.

The State contends that the Court of Appeals erred in reversing the instant case because of the failure of the trial court to

charge on the lesser included offenses of aggravated assault and reckless conduct. V.T.C.A.Penal Code, Sections 22.02 & 22.-05. The State contends that under the evidence presented appellant was not entitled to such charges. Specifically, the State points to appellant's testimony that he left the gun in his bedroom and was walking down the hallway inside his apartment, unarmed, when he was shot by police. The State argues that this testimony, if believed, shows that appellant is not guilty of any offense and merited no charge on lesser included offenses. See *Wallace v. State*, 679 S.W.2d 1 (Tex.Cr. App.1983).

The two step analysis for determining whether a charge on a lesser included offense should be given requires first, that the lesser included offense be included within the proof necessary to establish the offense charged; and second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Royster v. State*, 622 S.W.2d 442 (opinion on rehearing) (Tex.Cr. App.1981). The elements of aggravated assault applicable to the instant case are (1) a person, who (2) intentionally, knowingly, or recklessly (3) commits an assault (4) using a deadly weapon. See *Rocha v. State*, 648 S.W.2d 298 (opinion on rehearing) (Tex.Cr.App.1982). A person commits an assault by threatening another with imminent bodily injury. V.T.C.A.Penal Code, Sec. 22.01. Aggravated assault and reckless conduct are lesser included offenses of attempted murder and attempted capital murder. See *Ethridge v. State*, 648 S.W.2d 306 (Tex.Cr.App.1983); *Rocha*, supra; *Gallegos v. State*, 548 S.W.2d 50 (Tex.Cr. App.1977); Art. 37.09, V.A.C.C.P. The first step of the test is met in the instant case.

The Court of Appeals, citing *Ruiz v. State*, 523 S.W.2d 691 (Tex.Cr.App.1975) and *Thompson v. State*, 521 S.W.2d 621 (Tex.Cr.App.1974), held that appellant's testimony that he had no intent to kill required the trial court to charge on the lesser offense of aggravated assault. We

disagree with the result and reasoning of the Court of Appeals.

Appellant testified that he left his gun in his bedroom and walked into the hallway to go to the kitchen. He said he never went outside of the apartment, never pointed his gun at the police, never saw any police officers the day of the offense, and did not intend to murder anyone. Appellant's testimony was that he did not commit any offense. It was in this context that he testified that he did not intend to kill any police officer. This is almost like saying, "I was not there so I could not intend to kill anyone." This testimony is similar to that of the defendant in *Wallace*, supra, where, by his own testimony, the defendant was guilty of no offense at all. The Court of Appeals gave a meaning to appellant's statement that appellant did not. The statement cannot be plucked out of the record and examined in a vacuum. The instant case is not like *Ruiz*, supra, or *Thompson*, supra, in which part of a defendant's testimony could be reasonably believed by a jury in the context of the facts, so as to support a charge on the lesser included offense. See *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984).

In the instant case, appellant's intent is the difference between a conviction for attempted capital murder or aggravated assault or reckless conduct. The evidence must show that appellant is guilty only of the lesser offense. The evidence shows that appellant had fired the gun earlier that day and that he came outside with the loaded gun stuck in his waistband.

He saw between twelve and twenty police officers, ignored their orders to put his hands on his head and slowly and deliberately pulled the loaded gun from his waistband. Again, he ignored officers' orders to put the gun down, officers who were pointing guns at him. He swung the gun in an arc and stopped, leveling and pointing it at the officers.

Appellant's actions progressed step by step toward the firing of the gun which was prevented only by the officers' "beating him to the trigger." Such actions man-

ifest only the intent to kill the officer and do not evidence a mere threat with the gun. Each act progressed toward getting ready and aiming to fire the gun. The deliberateness of appellant's actions belies any attempt to simply threaten. The evidence does not support any inference that appellant is guilty only of aggravated assault or reckless conduct. The ground of error is overruled. The judgment of the Court of Appeals is reversed and the conviction is affirmed.

CLINTON and TEAGUE, JJ., dissent.

WHITE, J., not participating.

MILLER, Judge, concurring.

In dealing with the State's ground of error concerning inclusion of a lesser included offense in the court's charge, the majority opinion adds a nuance to the Court's recent pronouncements in this area espoused in *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984); *Bell v. State*, 693 S.W.2d 434 (Tex.Cr.App.1985); and *Aguilar v. State*, 682 S.W.2d 556 (Tex.Cr.App. 1985). I write to highlight the importance and correctness of this nuance in the understanding of the doctrine of lesser included offenses in the court's charge.

In dealing with appellant's denial that he ever intended to kill, the majority opinion makes the following statement:

"The statement [by appellant that he did not intend to kill] cannot be plucked out of the record and examined in a vacuum. The instant case is not like [other cases] in which part of a defendant's testimony could be reasonably believed by a jury *in the context of the facts*, so as to support a charge on the lesser included offense." (emphasis added)

Maj. op at 584. *Aguilar, Lugo* and *Bell*, supra, must be understood in the context of the above quote from today's majority opinion.

These cases hold that if there is evidence that the defendant is guilty of only a lesser included offense (the "guilty only" test), then same is raised by the evidence. It is contemplated in these rules that a jury might *selectively believe* proffered and introduced affirmative evidence and arrive at a verdict of guilt for a lesser included offense. Therefore, where the State has introduced sufficient evidence to support a charge on the primary offense, we look at *all* the evidence introduced to decide if a lesser included offense is raised. BUT, in looking at all the evidence to see if the "guilty only" test is met we must look at it in the context of the facts.

Here, appellant's denial that he was present at the scene of the offense is, in one sense if taken alone, affirmative, proffered and introduced evidence that he had no intent to kill. Taken alone, however, it cannot fit within the *context* of the other facts concerning the offense. As such it cannot be proffered and introduced evidence which, when considered with all of the evidence in the case, amounts to some evidence that the defendant is guilty only of a lesser included offense.

In context of the facts of this case, the majority is quite correct in saying that the evidence does not support any inference that appellant is guilty only of aggravated assault or reckless conduct.

With these remarks I join the majority opinion.