Opinion filed June 12, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed June 12,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00007-CR 

                                                     __________

 

                                  ALDO
RENE PACHECO, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee   

 

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR31738

 



 

                                             M E M O R A
N D U M   O P I N I O N

 








The
jury convicted Aldo Rene Pacheco of capital murder by murdering more than one
person in the same criminal transaction.  See Tex. Penal Code Ann. '
19.03(a)(7)(A) (Vernon Supp. 2007).  In accordance with the State=s waiver of seeking the
death penalty, the trial court sentenced appellant to confinement for life
without parole in the Institutional Division of the Texas Department of
Criminal Justice.  In his sole issue on appeal, appellant contends that the
trial court erred in denying his motion for instructed verdict on the grounds
that the State failed to prove that he committed the two murders in the same
criminal transaction.  We affirm.

                                                               Background
Facts

Appellant
fatally shot his estranged wife Barbara Pacheco, and her companion, James
Wiggs, on January 16, 2006, with a shotgun.  Appellant and his wife were in the
process of getting a divorce.  Both spouses sought custody of their four
children in the divorce.  The trial court awarded temporary custody of the
children to appellant=s
wife at a hearing that occurred on May 12, 2005.  The trial court also granted
appellant standard visitation with the children at this hearing.

An
incident occurred on May 23, 2005, that resulted in appellant losing his
visitation rights.  Appellant approached his wife at their children=s daycare center and told
her that they needed to talk.  Appellant subsequently kidnapped  his wife and
assaulted her at a local motel.   He attempted to take her to a room that he
had rented at the motel, but she escaped to the motel office and called the
police.

On
the day of the abduction and assault, appellant left two letters for his
brother to pick up at appellant=s
place of employment.  Appellant addressed one letter to his mother.  He
apologized to his mother and family members in the letter, presumably for what
he planned to do to his wife and himself at the motel.  He stated as follows in
the letter: 

I
know you might not understand why this happened, but I found out she was seeing
another guy she was involved with.  If I can=t
have her, then no other man is going to have her.  Try to get the kids and have
them in your lives. . . . If I can=t
have them, she can=t
have them, either.

 Appellant addressed the second letter to his children.  He apologized
for Adoing this to you
guys@ in the letter. 
He also stated:  AYou
guys would be better off without us in your life.@


Appellant had little contact with his children after the
motel incident.  Testifying on his own behalf, appellant stated that he was
frustrated with his lack of contact with his children.  Appellant=s frustration reached a
breaking point when he observed his wife, Wiggs, and his two-year-old son
together in a vehicle on January 16, 2006.  Appellant followed them to the
house where his wife and children were residing.  He testified that he did this
because he wanted to see his son.








A
confrontation subsequently ensued between appellant and Wiggs when Wiggs exited
the house to speak with appellant.  Appellant testified that he retrieved the
shotgun from his vehicle when it appeared that Wiggs was going to charge him
and throw soda cans at him.  Appellant admitted shooting Wiggs in the arm with
the shotgun.  Appellant testified that he then returned to his vehicle and Asat there a little bit@ thinking about what he had
done.  However, a witness from a nearby home testified that appellant attempted
to run over Wiggs with his vehicle after he shot him.  The medical examiner testified
that pellets from the shotgun wound to Wiggs=s
arm penetrated his chest wall and right lung.  The medical examiner further
testified that Wiggs bled to death as a result of the gunshot wound.

Appellant
subsequently drove  his vehicle through the garage door of the home and entered
the residence where his wife and son were located because he still wanted to
see his son.  Appellant testified that he argued with his wife after he entered
the residence about seeing his son.  He further testified that a struggle
ensued with his wife over the shotgun at which point he shot her in the
abdomen.  He subsequently shot her a second time in the upper body area because
AI was just so angry,
so mad that she tookBshe
[would not] let me have my babies.  That=s
all I wanted, to see my babies.@ 
The medical examiner testified that either of the two gunshot wounds inflicted
upon appellant=s wife
would have been fatal.  After a standoff with police lasting several hours,
appellant shot himself in the head with the shotgun.

                                                              Standard
of Review

A
challenge to the trial court=s
ruling on a motion for an instructed verdict is in actuality a challenge to the
legal sufficiency of the evidence to support the conviction. Cook v. State,
858 S.W.2d 467, 470 (Tex. Crim. App. 1993).  Therefore, when considering an
issue contending the trial court erred in overruling a motion for instructed
verdict, we will determine whether the evidence was legally sufficient to
support the conviction.  Id.  We consider the evidence presented at
trial by both the State and appellant in determining whether there was legally
sufficient evidence.  Id.  In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex. Crim. App. 2000).








Prior
to addressing appellant=s
contention about the sequence of the murders, we will address an ancillary
issue raised in his brief.  Appellant suggests that Aa serious question exists as to [his] murder
of James Wiggs as an intentional murder.@ 
He primarily bases this contention that he shot Wiggs in the arm rather than
his head or shoulder.  We disagree with appellant=s
contention.  Intent to kill may be inferred from the use of a deadly weapon in
a deadly manner.  Godsey v. State, 719 S.W.2d 578, 580‑81 (Tex.
Crim. App. 1986).  Further, A[i]f
a deadly weapon is used in [a] deadly manner, the inference is almost
conclusive that [the defendant] intended to kill.@ 
Id. at 581.  The evidence shows that appellant used a deadly weapon in a
deadly manner when he fatally wounded Wiggs.  Furthermore, there is ample
evidence that appellant was angry with Wiggs about his relationship with
appellant=s wife, and
a neighbor observed that appellant tried to run over Wiggs after he shot him. 
A rational trier of fact could have concluded from the evidence that appellant
intended to kill Wiggs when he shot him.

The
trial court defined Asame
criminal transaction@
in the court=s charge
as follows:  ASame
Criminal Transaction means a continuous and uninterrupted chain of conduct
occurring over a very short period of time in a rapid sequence of unbroken
events.@  See
Heiselbetz v. State, 906 S.W.2d 500, 506 (Tex. Crim. App. 1995); Vuong
v. State, 830 S.W.2d 929, 941 (Tex. Crim. App. 1992).  Viewed objectively,
the evidence establishes and appellant acknowledges that he shot Wiggs and his
wife within a matter of a few minutes at the same location.  Additionally, he
used the same weapon to commit the shootings.  The Court of Criminal Appeals
concluded in Jackson, 17 S.W.3d at 669, that evidence of multiple
victims being killed in the same manner with the same weapon in the same
location is sufficient to support a jury finding that the murders occurred in
the same criminal transaction.  








Appellant
contends that the shooting of his wife was Aa
tragedy separate and apart from [his] assault on Wiggs.@  He bases this contention on his own
testimony regarding his thoughts and intentions at the time of the shootings. 
The jury, as the trier of fact, is the sole judge of the credibility of the
witnesses and of the weight to be given to their testimony. Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon 1979).  Accordingly, the jury was free to
reject appellant=s self-serving
description of the events that transpired.  Appellant testified that his
initial purpose in coming to the house was to see his son.  He further
testified that he entered the home after shooting Wiggs for this same
purpose.   Based on our review of the record, we conclude that the jury could
have rationally concluded that appellant engaged in a continuous and
uninterrupted chain of conduct, occurring over a short period of time, of
carrying out the murder of more than one person in a rapid sequence of unbroken
events.  Appellant=s
sole issue is overruled.

                                                              This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

June 12, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.