

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-237-CR

JAMES CLAYTHAN BLEVINS                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

In three issues, Appellant James Claythan Blevins appeals his convictions for attempted murder and felony violation of a protective order. We affirm.

After threatening to kill his wife, Amy, and their two young sons, Appellant moved out of the house and signed an agreed protective order prohibiting him from coming within three city blocks of the house. The next month, Appellant violated the protective order, and Amy filed for divorce.

Appellant later pleaded guilty to the misdemeanor offense of violating a protective order.

Two months later, on June 13, 2008, Amy was at the house packing up to move. Jason Myers, a friend of her sister's husband, had offered his pickup truck to help. He had parked the truck out front and was inside helping Amy pack. Around 7 p.m., Appellant appeared at the front door and walked into the house. When he saw Amy, he started screaming at her. And when he saw Jason rounding the corner from the dining room, he shoved Amy aside and attacked the former Marine and Iraqi war veteran, punching him in the face. Jason subdued Appellant by holding him against the wall as Amy announced that she was calling the police. Appellant warned her that he would kill her if she did, and when Jason released his hold on him, Appellant stormed out of the house, climbed into his car, and sped away. He called his mother and told her that he was going to get his guns and go kill Amy.

Wichita Falls Police Officer Robert Rosdahl responded to Amy's 911 call. He and Amy stood in her driveway filling out his report when Appellant's car passed by and made the turn onto her street. When the driver's side came into view, Amy saw that Appellant was leaning out the window with a shotgun. As Appellant pulled in front of the house, Officer Rosdahl drew his service weapon and ordered him to put the shotgun down. Appellant complied, dropping the

2

shotgun after a brief standoff. As the officer wrestled him into the patrol car, Appellant yelled to Amy that no matter how long he was locked up, he would get out, get another gun, and come kill her.

After securing Appellant in the patrol car, Officer Rosdahl retrieved the shotgun from Appellant's car. It was loaded with four .410 shells. Underneath the driver's seat, Officer Rosdahl also found a knife and a Derringer chambered for a .410 shotgun shell.

The grand jury indicted Appellant for attempted murder, retaliation, and felony violation of a protective order. A jury found him not guilty of retaliation but guilty of attempted murder and felony violation of a protective order. It assessed his punishment at eleven years' confinement with a $5,000 fine for attempted murder and five years' confinement for violation of a protective order. The trial court sentenced Appellant accordingly.

In his first issue, Appellant contends that the evidence is legally insufficient to sustain the verdict for attempted murder. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

3

2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

One of the essential elements of attempted murder is that, while acting with specific intent to commit murder, the defendant does an act amounting to "more than mere preparation" that tends but fails to effect the murder. *See* Tex. Penal Code Ann. § 15.01(a) (Vernon 2003). Appellant claims that the evidence is legally insufficient to prove this essential element. He argues:

> The evidence produced at trial, when viewed in the light most favorable to the verdict, showed that after [Appellant] stated that he intended to kill his estranged wife, he went home, retrieved his shotgun, got into his vehicle and drove towards her home. While [Appellant] was still approximately 40 yards away from the house, however, he was intercepted by Officer Rosdahl. *Officer Rosdahl testified that [Appellant] did not attempt to fire the weapon [and] was unable to point the firearm out of the window.* [Emphasis added.]

Assuming for the sake of argument that transporting a loaded weapon to the home of one's estranged spouse after declaring an intent to kill her amounts to no more than mere preparation, Appellant's sole reliance on Officer Rosdahl's testimony misapplies the standard of review, which requires us to view the evidence in the light most favorable to the verdict. He entirely ignores Amy's testimony that she saw Appellant with "a shotgun hanging out the driver's side window" as he drove around the corner; that Officer Rosdahl turned around and noticed "the shotgun hanging out the window"; that although Appellant did not

4

fire the weapon, "he aimed it"; and finally, that he "was pointing it" at her. Furthermore, Jason testified that as Appellant pulled up, he could see the "firearm coming around and out the window"; that "he had it out the window pointed"; that "he looked very intent on shooting"; and that nothing would have stopped Appellant from shooting Amy if the officer had not been there.

Although Officer Rosdahl's testimony that Appellant could not manage to get the shotgun pointed out the window—despite trying to—appears to contradict testimony from Amy and Jason that Appellant pointed it out the window, we presume the jury resolved the apparent conflicts in the evidence in favor of the prosecution, and we defer to that resolution. *See Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793; *Clayton*, 235 S.W.3d at 778. Thus, viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to show that Appellant drove to Amy's house and pointed a shotgun at her with the intent to kill her.

Having held that the evidence shows that Appellant pointed a weapon at Amy intending to kill her, we must decide whether Appellant's conduct amounted to more than mere preparation as contemplated by the criminal attempt statute. Appellant concedes in his brief that the court of criminal appeals resolved this issue in *Godsey*, in which it held that evidence that the appellant had pointed a gun at officers during a stand off was sufficient to

5

show more than mere preparation. *See Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1983). The court of criminal appeals noted that the purpose and usefulness of the criminal attempt statute is that it permits law enforcement personnel to intervene and prevent the harm intended. *Id.* Attempt law allows intervention before the defendant has come dangerously close to committing the intended crime and allows the police "'a reasonable margin of safety after the intent to commit the crime was sufficiently apparent to them.'" *Id.* (quoting W. LaFave & A. Scott, Criminal Law, pp. 426–27 (1972)). To require some proof that a defendant attempted to fire the gun and misfired or that the shot missed its target undermines the notion of attempt offenses in which the act is more than mere preparation that "tends but fails to effect the commission of the offense intended." *Id.* The precise intent of the criminal attempt statute is to punish action for the intended offense while allowing intervention before an act that could constitute the offense itself occurs. *Id.*

The case before us is an example of the legislature's "precise intent" as set out in the criminal attempt statute put to good effect. As Jason testified, had Officer Rosdahl not been there to intervene, there would have been little or nothing to have stopped Appellant from committing murder. We hold that

the evidence is legally sufficient to support the verdict, and we overrule Appellant's first issue. *See id.*

In his second and third issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction for felony violation of a protective order by committing family violence against Amy because Amy testified that when Appellant shoved her, she did not feel any pain. Appellant argues that although family violence includes acts intended to result in assault as defined by Texas Penal Code section 22.01(a)(1) and (a)(2), it excludes assault defined by subsection (a)(3).

A person against whom a protective order is in place commits the offense of violating a protective order if he knowingly or intentionally commits an act of family violence. Tex. Penal Code Ann. § 25.07(a)(1) (Vernon Supp. 2009). "Family violence" has the meaning assigned by chapter 71 of the family code, which defines it as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, *assault*, or sexual assault . . . ." *Id.* § 25.07(b)(1); Texas Fam. Code Ann. § 71.004(1) (Vernon 2008) (emphasis added). Under the plain meaning of penal code section 22.01(a)(3), assault includes intentionally or knowingly causing contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or

7

provocative. Tex. Penal Code Ann. § 22.01(a)(3) (Vernon Supp. 2009). We reject Appellant's invitation to hold that assault includes less than what the legislature wrote into the plain language of the statute. Applying the plain meaning, therefore, we hold that, under the appropriate standards of review, the evidence is legally and factually sufficient to support the jury's implied finding expressed in its verdict that Appellant's shoving Amy, whether or not she felt any pain, was intended to result in intentional or knowing offensive physical contact. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Clayton*, 235 S.W.3d at 778; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). Accordingly, we overrule Appellant's second and third issues.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL: GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED: August 31, 2010

8