COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.
 2-09-237-CR

 

 

JAMES CLAYTHAN BLEVINS                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

In three
issues, Appellant James Claythan Blevins appeals his convictions for attempted
murder and felony violation of a protective order.  We affirm.








After
threatening to kill his wife, Amy, and their two young sons, Appellant moved
out of the house and signed an agreed protective order prohibiting him from
coming within three city blocks of the house. 
The next month, Appellant violated the protective order, and Amy filed
for divorce. Appellant later pleaded guilty to the misdemeanor offense of
violating a protective order. 

Two
months later, on June 13, 2008, Amy was at the house packing up to move.  Jason Myers, a friend of her sister=s
husband, had offered his pickup truck to help. 
He had parked the truck out front and was inside helping Amy pack.  Around 7 p.m., Appellant appeared at the
front door and walked into the house. 
When he saw Amy, he started screaming at her.  And when he saw Jason rounding the corner
from the dining room, he shoved Amy aside and attacked the former Marine and
Iraqi war veteran, punching him in the face. 
Jason subdued Appellant by holding him against the wall as Amy announced
that she was calling the police. 
Appellant warned her that he would kill her if she did, and when Jason
released his hold on him, Appellant stormed out of the house, climbed into his
car, and sped away.  He called his mother
and told her that he was going to get his guns and go kill Amy. 








Wichita
Falls Police Officer Robert Rosdahl responded to Amy=s 911
call. He and Amy stood in her driveway filling out his report when Appellant=s car
passed by and made the turn onto her street. 
When the driver=s side came into view, Amy saw
that Appellant was leaning out the window with a shotgun.  As Appellant pulled in front of the house,
Officer Rosdahl drew his service weapon and ordered him to put the shotgun
down.  Appellant complied, dropping the
shotgun after a brief standoff.  As the
officer wrestled him into the patrol car, Appellant yelled to Amy that no
matter how long he was locked up, he would get out, get another gun, and come
kill her.  

After
securing Appellant in the patrol car, Officer Rosdahl retrieved the shotgun
from Appellant=s car.  It was loaded with four .410 shells.  Underneath the driver=s seat,
Officer Rosdahl also found a knife and a Derringer chambered for a .410 shotgun
shell.  

The
grand jury indicted Appellant for attempted murder, retaliation, and felony
violation of a protective order.  A jury
found him not guilty of retaliation but guilty of attempted murder and felony
violation of a protective order.  It
assessed his punishment at eleven years=
confinement with a $5,000 fine for attempted murder and five years=
confinement for violation of a protective order.  The trial court sentenced Appellant
accordingly. 








In his
first issue, Appellant contends that the evidence is legally insufficient to
sustain the verdict for attempted murder. 
In reviewing the legal sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

One of
the essential elements of attempted murder is that, while acting with specific
intent to commit murder, the defendant does an act amounting to Amore
than mere preparation@ that tends but fails to effect
the murder.  See Tex. Penal Code
Ann. '
15.01(a) (Vernon 2003).  Appellant claims
that the evidence is legally insufficient to prove this essential element.  He argues:

The evidence produced at trial, when viewed in the light most
favorable to the verdict, showed that after [Appellant] stated that he intended
to kill his estranged wife, he went home, retrieved his shotgun, got into his
vehicle and drove towards her home. 
While [Appellant] was still approximately 40 yards away from the house,
however, he was intercepted by Officer Rosdahl. Officer Rosdahl testified
that [Appellant] did not attempt to fire the weapon [and] was unable to point
the firearm out of the window. [Emphasis added.]

 








Assuming
for the sake of argument that transporting a loaded weapon to the home of one=s
estranged spouse after declaring an intent to kill her amounts to no more than
mere preparation, Appellant=s sole
reliance on Officer Rosdahl=s
testimony misapplies the standard of review, which requires us to view the
evidence in the light most favorable to the verdict.  He entirely ignores Amy=s
testimony that she saw Appellant with Aa
shotgun hanging out the driver=s side
window@ as he
drove around the corner; that Officer Rosdahl turned around and noticed Athe
shotgun hanging out the window@; that
although Appellant did not fire the weapon, Ahe aimed
it@; and
finally, that he Awas pointing it@ at her.
Furthermore, Jason testified that as Appellant pulled up, he could see the Afirearm
coming around and out the window@; that Ahe had
it out the window pointed@; that Ahe
looked very intent on shooting@; and
that nothing would have stopped Appellant from shooting Amy if the officer had
not been there.         Although Officer
Rosdahl=s
testimony that Appellant could not manage to get the shotgun pointed out the
windowCdespite
trying toCappears to contradict testimony
from Amy and Jason that Appellant pointed it out the window, we presume the
jury resolved the apparent conflicts in the evidence in favor of the
prosecution, and we defer to that resolution. 
See Jackson, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793; Clayton,
235 S.W.3d at 778.  Thus, viewing the
evidence in the light most favorable to the verdict, we hold that the evidence
is legally sufficient to show that Appellant drove to Amy=s house
and pointed a shotgun at her with the intent to kill her.








Having
held that the evidence shows that Appellant pointed a weapon at Amy intending
to kill her, we must decide whether Appellant=s
conduct amounted to more than mere preparation as contemplated by the criminal
attempt statute.  Appellant concedes in
his brief that the court of criminal appeals resolved this issue in Godsey,
in which it held that evidence that the appellant had pointed a gun at officers
during a stand off was sufficient to show more than mere preparation.  See Godsey v. State, 719 S.W.2d 578,
583 (Tex. Crim. App. 1983).  The court of
criminal appeals noted that the purpose and usefulness of the criminal attempt
statute is that it permits law enforcement personnel to intervene and prevent
the harm intended.  Id.  Attempt law allows intervention before the
defendant has come dangerously close to committing the intended crime and
allows the police A>a
reasonable margin of safety after the intent to commit the crime was
sufficiently apparent to them.=@ Id.
(quoting W. LaFave & A. Scott, Criminal Law, pp. 426B27
(1972)).  To require some proof that a
defendant attempted to fire the gun and misfired or that the shot missed its
target undermines the notion of attempt offenses in which the act is more than
mere preparation that Atends but fails to effect the
commission of the offense intended.@ Id.  The precise intent of the criminal attempt
statute is to punish action for the intended offense while allowing intervention
before an act that could constitute the offense itself occurs.  Id.








The case
before us is an example of the legislature=s Aprecise
intent@ as set
out in the criminal attempt statute put to good effect.  As Jason testified, had Officer Rosdahl not
been there to intervene, there would have been little or nothing to have
stopped Appellant from committing murder. 
We hold that the evidence is legally sufficient to support the verdict,
and we overrule Appellant=s first issue.  See id.

In his
second and third issues, Appellant contends that the evidence is legally and
factually insufficient to support his conviction for felony violation of a
protective order by committing family violence against Amy because Amy
testified that when Appellant shoved her, she did not feel any pain.  Appellant argues that although family
violence includes acts intended to result in assault as defined by Texas Penal
Code section 22.01(a)(1) and (a)(2), it excludes assault defined by subsection
(a)(3).  








A person
against whom a protective order is in place commits the offense of violating a
protective order if he knowingly or intentionally commits an act of family
violence.  Tex. Penal Code Ann. '
25.07(a)(1) (Vernon Supp. 2009). AFamily
violence@ has the
meaning assigned by chapter 71 of the family code, which defines it as Aan act
by a member of a family or household against another member of the family or
household that is intended to result in physical harm, bodily injury, assault,
or sexual assault . . . .@ 
Id. ' 25.07(b)(1); Texas Fam. Code
Ann. '
71.004(1) (Vernon 2008) (emphasis added).  Under the plain meaning of penal code section
22.01(a)(3), assault includes intentionally or knowingly causing contact with
another when the person knows or should reasonably believe that the other will
regard the contact as offensive or provocative. 
Tex. Penal Code Ann. '
22.01(a)(3) (Vernon Supp. 2009).  We
reject Appellant=s invitation to hold that
assault includes less than what the legislature wrote into the plain language
of the statute.  Applying the plain
meaning, therefore, we hold that, under the appropriate standards of review,
the evidence is legally and factually sufficient to support the jury=s
implied finding expressed in its verdict that Appellant=s
shoving Amy, whether or not she felt any pain, was intended to result in
intentional or knowing offensive physical contact.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Steadman v. State, 280 S.W.3d 242, 246 (Tex. Crim. App.
2009); Clayton, 235 S.W.3d at 778; Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006). 
Accordingly, we overrule Appellant=s second
and third issues.

Having
overruled all of Appellant=s
issues, we affirm the trial court=s
judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL: GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice,
Retired, Sitting by Assignment).

 

PUBLISH

 

DELIVERED:  August 31, 2010