

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00294-CR

LUCIO ZAVALA SIFUENTES, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CR-18J-160, Honorable Roland Saul, Presiding

August 7, 2020

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Lucio Zavala Sifuentes, Jr., was convicted of attempted capital murder following a jury trial.[1]  The jury assessed appellant's punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $2,500 fine.  By his sole issue, appellant challenges the sufficiency of the evidence presented to support his conviction.  We affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. §§ 15.01(a) (West 2019), 19.03(a)(1) (West Supp. 2019).

## Background

During the early morning hours of September 7, 2018, Hereford Police Officer Andrew Johnston was on patrol near the local high school conducting building checks. Officer Johnston observed appellant, a pedestrian, walking in the middle of the roadway near the school. The officer stopped his patrol car and obtained appellant's identification. After explaining why he stopped appellant, the officer asked for appellant's consent to conduct a "pat down" to determine if appellant had any weapons. The officer instructed appellant to interlock his hands on his head. Instead of complying with that request, appellant fled. The officer pursued appellant and yelled at appellant to stop. As the officer caught up with appellant, he deployed his taser. When appellant was hit by the taser, he fell and a gun he was holding discharged.

Officer Johnston testified that he heard a gunshot after he deployed the taser. According to the officer, the gunshot was not fired in his direction. However, as the officer approached appellant's position, appellant rolled onto his back and Officer Johnston heard a second gunshot in his direction, "right by [his] face." The second gunshot was aimed at him, but it missed to his left. Although appellant initially responded as if the taser was properly attached, Officer Johnston believes only one of the taser prongs hit appellant, rendering the taser ineffective based on how quickly appellant rolled over when he hit the ground and fired the second shot. A scuffle between the officer and appellant ensued. During the scuffle, Officer Johnston's body cam was dislodged. The officer pinned appellant's hands to the ground, and he obtained possession of appellant's gun. Appellant separated himself from the officer. Then, Officer Johnston drew his service

2

weapon and told appellant to get on the ground. Instead of complying with the officer's commands, appellant again escaped and fled the scene.

Officer Brady Grunder responded to Officer Johnston's radio call reporting "shots fired." However, by the time Officer Grunder arrived on the scene, appellant could not be located.

Officer Johnston recovered a .38 caliber Smith & Wesson revolver from the scene. The weapon, a six-shot revolver, was identified as the gun that was taken from appellant during the scuffle. Officer Johnston found two spent casings and four unspent rounds inside the revolver.

The State introduced a video recording from Officer Johnston's patrol car and his body cam video. Officer Johnston identified two noises from these recordings as gunshots. According to Officer Johnston, he is "100 percent" certain that appellant shot at him during the incident in question. "Initially, I thought I got shot. In the split second I realized I was still conscious; I started to fight and reach for [appellant's] hands and try to get [the gun] from him." Officer Johnston testified that after the incident, he had ringing in his left ear and pain in his left shoulder. He described the sensation as being similar to that experienced when one fails to wear ear protection at a gun range.

Appellant testified in his own defense. On the night of the encounter with Officer Johnston, appellant claimed he was on his way to sell the revolver. He did not want the officer to find the revolver when he was conducting the pat down so he ran. While he was running from the officer, he found a place where he could dispose of the gun by throwing it over a fence. Before he could do so however, he was struck by the taser between his shoulder blades which caused him to "lock up." The gun accidentally discharged after he

3

was hit with the taser. Appellant stated Officer Johnston jumped on his back while he was laying on the ground. According to appellant, he did not have possession of the revolver after he hit the ground. Appellant denied firing the gun twice or firing it in Officer Johnston's direction. Appellant did not hear a second gun shot and maintained that he did not "intentionally pull the trigger" to fire at the officer.

A jury convicted appellant of attempted capital murder and sentenced him to forty years' confinement. Appellant timely filed this appeal.

Analysis

By his appeal, appellant presents a single issue. Appellant contends that the evidence is insufficient to establish that he had the specific intent to kill Officer Johnston.

The standard that we apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Under that standard, when assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimonies, and we will not usurp this role by substituting our judgment for that of the jury. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We also measure the sufficiency of the evidence against the elements of the offense as

4

defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In this case, appellant was charged with attempted capital murder. The Penal Code provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2019). Murder becomes capital murder under certain circumstances, including when the person murders a peace officer who is acting in the lawful discharge of his official duties and whom the person knows to be a peace officer. *Id.* § 19.03(a)(1). An attempt to commit an offense occurs when, with the specific intent to commit the offense, a person does an act that amounts to "more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

To permit the jury to find appellant guilty of the attempted capital murder of Officer Johnston, the State was required to prove beyond a reasonable doubt that, with the specific intent to cause the death of Officer Johnston, while knowing that he was a peace officer acting in the lawful discharge of an official duty, appellant, committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of capital murder. *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984) (op. on reh'g) ("[A] specific intent to kill is a necessary element of attempted murder."); "[T]he specific intent to kill may be inferred from the use of a deadly weapon." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); see also *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986).

Appellant does not challenge the sufficiency of the evidence to establish that Officer Johnston was a peace officer who was acting in the lawful discharge of an official

duty or that appellant was aware of this fact. Instead, appellant argues that the evidence was insufficient to show that he intended to kill Officer Johnston.

In this case, the record demonstrates that appellant fled from the officer with a loaded revolver. Officer Johnston distinguished the first gunshot, which was directed away from him, from the second one, which was fired in his direction to his left side. The officer was 100 percent certain that he was shot at and he identified two sounds as gunshots on his body cam audio. He alerted other officers to the threat indicating "shots fired" on his police radio. Further, he experienced ringing in his left ear which supports the officer's testimony that he was in close proximity to a gun when it discharged. The jury also heard testimony that a six-shot revolver was recovered at the scene. The revolver had two spent casings inside the cylinder.

Although appellant challenges the credibility of Officer Johnston's testimony, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. As such, the jury is free to believe all, some, or none of a witness's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Monreal v. State*, 546 S.W.3d 718, 724-725 (Tex. App.—San Antonio 2018, pet. ref'd.). Here, the jury was free to reject appellant's claim that he was incapacitated by the taser and that he did not fire a second shot or fire the gun in the direction of Officer Johnston.

The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death could not result. *Godsey*, 719 S.W.2d at 580-81. Firing a revolver in the direction of an arresting officer under these circumstances constitutes a manner of use in which death was a likely result. Viewing

6

the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of attempted capital murder.  Appellant's sole issue is overruled.

Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Do not publish.