

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0589-22

### AARON CALEB SWENSON, Appellant

### v.

### THE STATE OF TEXAS

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

**SLAUGHTER, J., filed a dissenting opinion.**

Appellant's actions and words in this case are despicable, disgusting, and horrific. I am completely appalled. But that does not change the fact that the statutory language, *by which we are bound*, does not support an attempted capital murder conviction here. There is simply no way around the fact that, in a prosecution for attempted capital murder of a peace officer, the evidence presented at trial must be legally sufficient to prove that

Appellant did "an act amounting to more than mere preparation that *tend[ed] but fail[ed] to effect the commission of the offense intended*." *See* TEX. PENAL CODE § 15.01(a) (emphasis added). There is no evidence here of any "act" by Appellant that could logically be said to have "tended but failed" to effect the killing of a peace officer. The Court suggests that Appellant's conduct in making a U-turn to drive to the location where he had previously seen a police officer is sufficient to prove his guilt. But the act of driving to a particular spot where a police officer had been (but had since left) did not "tend but fail to effect" the killing of that police officer. Nor did the act of having guns and ammunition in the car "tend but fail" to effect a murder of a peace officer. And neither was Appellant's hateful speech an act that "tended but failed" to effect a murder of a peace officer. By upholding Appellant's conviction under these circumstances, the Court has failed to defer to the statutory requirements and has effectively excised the "tends but fails to effect" language from the attempt statute. Moreover, as a practical consideration, the Court's opinion suggests for all future cases that anytime someone drives to a location where a victim is believed to be while armed and harboring the intent to commit an offense, an attempt has been committed. This constitutes a vast expansion of the Texas attempt statute in a manner that is unsupported by either the statutory language or our caselaw. I would uphold the judgment of the court of appeals that found the evidence legally insufficient to support Appellant's conviction. Therefore, I dissent.

## I. Discussion

The facts in the record are largely uncontested. The question the Court must resolve, therefore, is whether Appellant's conduct, as a matter of law, meets the requirements for

establishing the offense of attempt to commit capital murder of a peace officer. *See* TEX. PENAL CODE §§ 15.01(a); 19.03(a)(1); *see also Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020) (observing that, "[i]n some cases, [ ] legal sufficiency turns upon the meaning of the statute under which the defendant is being prosecuted. We ask if certain conduct actually constitutes an offense under the statute."). This question requires us to interpret the attempt statute using our standard canons of statutory interpretation. As shown below, the Court has failed to utilize the proper canons of statutory interpretation to resolve this case. Instead, even without finding the statute ambiguous, the Court relies on extratextual sources in ascertaining the meaning and proper interpretation of the attempt statute in a manner contrary to the Legislature's expressed intent. The effect of this is twofold. First, the Court judicially modifies the statutory language. Second, the Court's modification of the statutory language vastly expands attempt liability under Texas law.

A. **The Court improperly cites extratextual considerations and fails to defer to the statutory language.**

"When we interpret statutes, we look to the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment." *Id*. "If the plain language is clear and unambiguous, our analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Id.* (quoting *Long v. State*, 535 S.W.3d 511, 521 (Tex. Crim. App. 2017)); *see also Whitfield v. State*, 430 S.W.3d 405, 408 (Tex. Crim. App. 2014) ("In construing statutes, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its

enactment. This strict reading of the statutory language is necessary because the text of the statute is the law in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor.") (internal quotations omitted). It is *only* if the meaning of the statutory text is ambiguous, or if application of the plain text would lead to absurd results that the Legislature could not have possibly intended, that we may consult extratextual sources. *See Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991) ("If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, *then and only then, out of absolute necessity, is it constitutionally permissible* for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history.") (emphasis added).

Against the backdrop of these canons of construction, the Court's opinion today bypasses the statutory language and improperly relies on various extratextual sources to support its holding. Specifically, the Court discusses the Model Penal Code at length, even while acknowledging that the Model Penal Code provisions "differ significantly" from the Texas attempt statute that was ultimately adopted by the Legislature (and, indeed, given these differences, it is apparent that the Texas Legislature firmly rejected the wording of the Model Penal Code in enacting Section 15.01). The Court nevertheless goes on to discuss other state and federal courts' constructions of Model Penal Code-based attempt statutes. It concludes that these jurisdictions have interpreted their statutes to require not only proof of intent but also acts amounting to more than mere preparation to commit an offense. The Court's point in engaging in this discussion seems to be to prove that our

Texas attempt statute should in fact be interpreted in the same manner as the Model Penal Code provision, even though the provisions are worded quite differently. Notably, the Model Penal Code provision requires only a "substantial step" towards the commission of the intended offense. It does not contain any language that is analogous to the more rigorous "tends but fails to effect the commission of the offense" requirement under Texas' attempt statute.[1] The Court's focus on the intent behind the Model Penal Code and related commentaries, its citation to caselaw from other jurisdictions interpreting Model Penal Code-based statutes, and its reliance on policy considerations favoring early law enforcement intervention all constitute a significant departure from our usual approach to statutory interpretation, which demands adherence to the plain and unambiguous language of the statute. The Court acknowledges that the Texas attempt statute is not ambiguous, but it suggests that the statutory language is "imprecise." Claiming that it is proper to look to the Model Penal Code because we need to know "where to draw the imaginary attempt line," however, does not justify excising an entire element from the statute.

Moreover, the commentary of what lawyers from other states think the law should be or how it should be interpreted should have absolutely no impact on our interpretation of a clear and unambiguous Texas statute. *See State v. Hardin*, 664 S.W.3d 867, 872 (Tex.

---

[1] *Compare* Model Penal Code § 5.01(1) ("A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he: (c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."), *with* TEX. PENAL CODE § 15.01 ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.").

Crim. App. 2022) ("(1) [T]he text of the statute is the law; (2) the text is the only definitive evidence of what the legislators had in mind when the statute was enacted into law; and (3) the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted."). And even if we disagree with the law or do not like the result it yields in a particular case, we are still bound to apply it as written. It is solely for the legislative branch to modify the law if it is found to lead to an undesirable outcome in a particular case or cases. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed. That discretion is limited only by the Due Process Clause of the federal constitution and the Due Course of Law provision of the Texas Constitution.").

The Court's improper focus on the Model Penal Code and related caselaw causes it to significantly depart from the statutory requirements under Penal Code Section 15.01. The wording of Texas' attempt statute is plain and unambiguous in requiring that a person, while harboring the specific intent to commit the offense, *both* "does an act amounting to more than mere preparation" to commit the offense and that the act "tends but fails to effect the commission of the offense intended." TEX. PENAL CODE § 15.01(a). And yet, the Court's opinion does not even try to explain how Appellant's actions tended but failed to effect the killing of a peace officer. *See id*. Indeed, the Court's opinion scarcely mentions the "tends but fails to effect" language at all, instead focusing solely on the "more than mere preparation" language that it finds controlling, consistent with the Model Penal Code's "substantial step" requirement. The Court's omission of this essential statutory

element from its sufficiency analysis is palpable, and it simply cannot be squared with our repeated statements that we will adhere to the literal text of the statute absent extraordinary circumstances. The Court has effectively rewritten the attempt statute to excise the "tends but fails to effect the commission of the offense" language, thereby improperly lowering the State's burden of proof to establish attempt.

**B.    The Court's approach results in a vast expansion of attempt liability under Texas law.**

An examination of our caselaw in this area illustrates the great extent to which the Court has departed from the statutory requirements in reaching its holding in this case. The Court scarcely discusses the facts of our prior attempt cases, even when these cases demonstrate that we have in the past rigorously applied the "tends but fails to effect" requirement found in Penal Code Section 15.01.

At the outset, I acknowledge that our caselaw provides that the attempt statute does not require the defendant to go so far as the "last proximate act" preceding the successful completion of the intended offense before he may be held criminally liable for attempt. *McCravy v. State*, 642 S.W.2d 450, 460 (Tex. Crim. App. 1982) (op. on reh'g). However, our cases signal that we must draw the line close enough to the successful completion of the intended offense that a person will not be held criminally responsible when a police officer or other person or event intervenes before the person begins to implement his criminal designs. *Bledsoe v. State*, 578 S.W.2d 123, 125 (Tex. Crim. App. [Panel Op.] 1979). In *Bledsoe*, the Court held the evidence insufficient to establish the defendant's guilt for attempted burglary of a vehicle. *Id*. The facts there showed that police had come upon

the defendant in a parking lot after receiving a report of a burglary in progress. The defendant was crouched between two vehicles, and a screwdriver and coat hanger were found within the defendant's reach. This Court held the evidence insufficient because there was no evidence that the defendant had progressed to the point of trying to break into a vehicle. *Id.* at 125-26 ("[T]here is no evidence that appellant committed an *act tending to effectuate the breaking into or entering of the complaint's [sic] car*."). The Court stated, "A person should not be held criminally responsible simply because a vigilant police officer intervenes before he begins to implement his criminal designs." *Id.* at 125.[2]

---

[2] An actor may also avoid criminal liability for an attempt by renouncing his criminal objective and avoiding or preventing commission of "the offense attempted." *See* TEX. PENAL CODE § 15.04(a) ("It is an affirmative defense to prosecution under Section 15.01 that under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor *avoided commission of the offense attempted* by *abandoning his criminal conduct* or, if abandonment was insufficient to avoid commission of the offense, *by taking further affirmative action that prevented the commission*.") (emphasis added). This provision plainly contemplates that the actor who is committing attempt has already begun to engage in conduct that, if carried through to completion, would actually result in commission of the "offense attempted"—otherwise it would make no sense to say that the actor could avail himself of a renunciation defense by "*avoid[ing]* commission of the offense attempted" by "*abandoning* his *criminal conduct*" or, alternatively, by taking other steps to "*prevent*[ ] the commission" of the offense attempted. This language is entirely consistent with the "act . . . that tends but fails to effect" language under Section 15.01 that I have emphasized in my analysis above.

The Court's statements about how the renunciation defense might apply to this case illustrate the problems with its approach. The Court seems to concede that if Officer Price had not moved from his position and Appellant had merely driven past him, then Appellant could have potentially availed himself of a renunciation defense. But, because Officer Price did move, the Court suggests, Appellant lost any opportunity to rely on a renunciation defense. Aside from presenting possible concerns about arbitrariness and vagueness, the Court's interpretation does not comport with the statutory language in Section 15.04(a)—after all, if Officer Price had stayed in his location and Appellant had simply driven past him, how would that constitute Appellant "*avoid[ing]* commission of" murder by "*abandoning* his criminal conduct"? Under this fact pattern, there would be nothing for Appellant to "avoid" or "abandon" because he had not yet engaged in any conduct that might plausibly bring about Officer Price's death.

By contrast, in *Godsey v State*, we held that brandishing or pointing a firearm toward a nearby, intended victim goes beyond mere preparation and tends to effect the commission of a homicide, when the only thing left to do before successfully completing the intended offense is to pull the trigger. 719 S.W.2d 578, 583 (Tex. Crim. App. 1986). In *Godsey*, the defendant emerged from an apartment unit during a standoff with police officers. *Id.* at 580. Defying the officers' commands, the defendant brandished a firearm, moved it in an arc, and pointed it at several officers before leveling it against two officers standing directly across from him, less than 15 feet away. *Id.* The officers shot the defendant, neutralizing him, and the defendant was arrested. *Id.* The State charged him with attempted capital murder. *Id.* After the jury convicted the defendant, he appealed, arguing, *inter alia*, that "the act of pointing a gun is not an act that amounts to more than mere preparation for the

---

Addressing the fact pattern that actually occurred, the Court is apparently untroubled by the fact that, under its interpretation, Officer Price's decision to drive away would deprive Appellant of a renunciation defense. The Court takes the view that Section 15.04 contemplates that voluntary renunciation will be "impossible" under some circumstances, and in support it cites subsection (c) of the statute. But Subsection (c) does not recognize that renunciation will sometimes be factually "impossible"; instead, it sets forth several circumstances in which the Legislature has determined that a defendant's renunciation should not be considered "voluntary" and thus should not absolve him from criminal liability. *See* TEX. PENAL CODE § 15.04(c) ("*Renunciation is not voluntary if it is motivated in whole or in part*: (1) by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective; or (2) by a decision to postpone the criminal conduct until another time or to transfer the criminal act to another but similar objective or victim.") (emphasis added). Contrary to the Court's suggestion, this provision does not prove that the Legislature intended for someone in Appellant's position to be unable to renounce his criminal plans simply because an intended victim drove away. To be clear, though, my position is that the renunciation defense would not come into play here at all because the essential elements of attempt were not satisfied, and so it would have been unnecessary for Appellant to rely on a renunciation defense.

offense of attempted murder." *Id.* at 583. In rejecting this argument and affirming the conviction, we explained that the attempt statute is designed to "allow[ ] intervention before the defendant has come dangerously close to committing the intended crime and allows the police 'a reasonable margin of safety after the intent to commit the crime was sufficiently apparent to them.'" *Id*. at 583 (quoting W. LaFave & A. Scott, Criminal Law, pp. 426–27 (1972)) (emphasis added). The Court reasoned that in these circumstances, "[t]he only act that appellant did not do was pull the trigger, an act which could have accomplished the commission of murder." *Id.* The Court concluded,

> To require some proof that a defendant attempted to fire and the gun misfired or the shot missed its target undermines the notion of attempt offenses in which the act is more than mere preparation that "tends but fails to effect the commission of the offense intended." The precise intent of Sec. 15.01 is to punish action for the intended offense while allowing intervention before an act which could constitute the offense itself occurs. Appellant very slowly and deliberately pulled a loaded revolver in direct violation of police instructions and moved it in such a way as to aim at two officers. The only remaining act for the commission of capital murder was for appellant to pull the trigger and hit his target.

*Id.* The Court thus upheld the conviction over the defendant's sufficiency challenge.[3]

---

[3] Judge Walker's dissent points out that even our prior caselaw does not strictly adhere to the statutory language. I agree with that observation. Pointing a gun at someone without pulling the trigger does not tend but fail to effect a killing of that person. The strictest interpretation of the attempt statute would require the defendant to actually pull the gun's trigger and miss, or fire and hit, but not kill, the victim. But given Texas Penal Code § 1.05(a)'s instruction that penal code provisions need not be strictly construed but should instead "be construed according to the fair import of their terms, to promote justice and effect the objectives of the code," I believe our prior caselaw drawing the line at the penultimate step satisfies the objective. *See, e.g., Godsey, supra*. Section 1.05(a), however, does not give us permission to rewrite the statute, omit an element of the statute, or adopt a statute used in other states but rejected by our Texas Legislature.

*Bledsoe* and *Godsey* provide bookends for the proper sufficiency analysis in attempt cases. The Court should focus on the intended offense (here, intentionally or knowingly causing the death of a peace officer) and whether the defendant's actions came *close enough* to effectuating the commission of that offense (i.e., his actions were "more than mere preparation that *tended but failed to effect*" the desired result), while still allowing law enforcement some safe window for preventing crimes.

In this case, Appellant did not commit the "last proximate act" preceding the successful completion of a homicide—he did not shoot at officers and miss. Nor did he commit the penultimate proximate act preceding the successful completion of a homicide like the defendant in *Godsey* did when he brandished and pointed a firearm at multiple police officers whom he had intended to kill. Instead, Appellant's actions here are further removed from the successful completion of a homicide.

There is no dispute that Appellant possessed multiple loaded weapons, but there is also no evidence that Appellant took any action with those weapons, beyond mere possession, in furtherance of an attempt to commit homicide. Thus, Appellant's arming himself with multiple weapons, without more, was mere preparation.

The Court's opinion focuses primarily on Appellant's conduct in driving around Bowie County looking for police officers to kill and, in particular, his act of driving back to the location where he had seen a police officer parked several minutes earlier. I agree with the court of appeals' assessment on this point when it concluded that "driving and trying to locate a victim are at least as preparatory as mere possession of a gun." *Swenson*, 654 S.W.3d at 154. Searching for, and identifying a target are, almost by definition, acts of

mere preparation to commit an intentional homicide. Indeed, neither action would be capable of causing the death of another person if carried through to successful completion, and thus neither action "tends to effect" a homicide. The record here indicates that Appellant never even came within 100 yards of any officer until he was surrounded. And by that point, although Appellant had weapons within easy reach, there is no evidence of him reaching for any weapon. Instead, the record shows that by that time, he was motionless in his car with his hands raised, and he later proceeded to precisely follow at least five instructions from law enforcement before surrendering.

By reaching the opposite conclusion on these bare facts, the Court's opinion allows a person to be held criminally responsible before he begins to implement his criminal designs. This is, of course, contrary to our caselaw described above, as well as the plain statutory language. *See Bledsoe, supra*. I cannot conceive of how the Court will logically distinguish this case from other situations where the defendant is driving around with weapons in his vehicle, en route to a location where a victim may or may not be present, while harboring an intent to commit some offense or another. In every such instance, it can now be argued that he has committed attempt of the intended offense—even though he has not committed any discrete act that would tend but fail to effect the commission of the offense. In this sense, the Court's approach constitutes a vast expansion of the attempt statute and the types of fact patterns that can trigger liability for attempt.

To be clear, I do not mean to suggest that to support a conviction in an attempted homicide case, the State *must* prove that the defendant "brandished, wielded, or displayed" a weapon within "striking distance" of the intended victim. *See Swenson*, 654 S.W.3d at

154. I commend but disagree with the court of appeals's effort to construct a bright-line test to use in reviewing criminal attempt convictions. The mere fact that a given type of attempt offense tends to follow a specific fact pattern does not preclude the State from alleging that the defendant sought to commit the intended offense through alternate means. Further, I also do not believe that law enforcement should have to wait until a defendant is engaging in dangerous behavior to stop an offense from occurring. As a pure matter of policy, I empathize with the State's position on this point. Nevertheless, we cannot disregard the plain statutory requirements because of policy considerations that might favor law enforcement objectives. Appellant's conduct in this case, simply put, did not cross the line from mere preparation into conduct that would tend to effect a homicide of a peace officer. The Court errs by disregarding the statutory requirements to uphold the conviction here. It should instead apply the statute as written giving effect to each word and phrase. But the Court should also urge the Legislature to either amend the statute or, better yet, enact a new statute that provides additional protection specific to law enforcement for situations like the one here.

## II.    Conclusion

In view of the foregoing, the Court should hold that the evidence, viewed in the light most favorable to the verdict, is legally insufficient to sustain Appellant's conviction for attempted capital murder of a peace officer. Therefore, we should affirm the judgment of the court of appeals. Even though I despise this proper result given the facts of this case, it is still our duty to strictly and faithfully apply the law as enacted by the Legislature. Because the Court's opinion instead forgoes this duty in favor of upholding the conviction

on these admittedly disturbing facts, thereby resulting in a vast expansion of the Texas attempt statute in a manner not compelled by the statutory language, I most vigorously dissent.

Filed: November 20, 2024

Publish